Kimberly R. Boyles                                        **IN THE**
8435 Glen Lake Drive
Cummings, GA 30028                                        **CIRCUIT COURT**

Plaintiff,                                        *                **FOR**

v.                                                *                **BALTIMORE CITY**

Baltimore City Police Department                  *
242 West 29th Street
Baltimore, MD 21211                               *

Serve on Resident Agent:                          *

   Anthony W. Batts                           *    Civil Action No. _____
   Police Commissioner
   242 West 29th Street                       *
   Baltimore, MD 21211                        *

   Defendant.                                 *

*      *      *      *      *      *      *      *      *      *      *      *

## COMPLAINT

**COMES NOW**, Kimberly R. Boyles, by and through her attorneys, Paul V. Bennett,

Esq., Jeffrey J. Sadri, Esq., and the Law Office of Paul V. Bennett, P.A., and hereby sues the

Baltimore City Police Department (hereinafter referred to as "BPD") and states as follows:

### JURISDICTION AND VENUE

1.  This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42

    U.S.C. §§ 2000e, et seq. (hereinafter referred to as "Title VII").

2.  This Court has jurisdiction over Plaintiff's Americans with Disabilities Act ("ADA")

    claim pursuant to 42 U.S.C. §§ 12101 et seq.

3.  That all the actions complained of herein took place in Baltimore City, Maryland.

4.  Defendant is a city wide police department, located in Baltimore, Maryland.

5.      That at all times relevant hereto, Defendant BPD constitutes a government agency

employing fifteen (15) or more persons and is an "employer" within the meaning of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. and

the ADA, 42 U.S.C. §§ 12101 et seq.

6.      In accordance with Title VII and the ADA, Plaintiff timely filed a Charge of

Discrimination and Retaliation with the Baltimore Community Relations Commission

on August 25, 2011, which was contemporaneously cross-filed with the U.S. Equal

Employment Opportunity Commission. On February 6, 2014, a Notice of Right to

Sue was received by the Plaintiff from the Equal Employment Opportunity

Commission. Therefore, Plaintiff has properly exhausted her administrative remedies

before filing suit.

## FACTS COMMON TO ALL COUNTS

7.      Plaintiff's gender is female.

8.      Plaintiff's race is Caucasian.

9.      Plaintiff's colour is white.

10.     Plaintiff was hired by BPD as a police officer on December 5, 2006 with an annual

salary of approximately fifty six thousand dollars ($56,000.00). Plaintiff also received

employment benefits while working for Defendant, including, without limitation, life

insurance, health and dental coverage.

11.     As a police officer, Plaintiff's duties included, but were not limited to, responding to

calls concerning situations which posed a threat to the security of Baltimore City

residents and visitors, patrolling Baltimore City neighborhoods, working on criminal

and civil case files, and completing administrative tasks.

12.  On June 6, 2009, while attempting to subdue a drunk and disorderly suspect, Plaintiff suffered from a line-of-duty injury which resulted in severe brain trauma and consequential cognitive and neurological impairment, symptoms of which included, without limitation: blackouts, slow reaction time, daily headaches, increased migraine frequencies, vertigo, decreased concentration, and memory loss. Plaintiff was further diagnosed with a contusion of the cervical cord and a torn cornea/retina, respectively causing her extreme back and neck pain and significant vision impairment. Up and through the date of this Complaint, as a direct result of her line-of-duty injury, Plaintiff still experiences physical pain and cognitive debilitation.

13.  Plaintiff's brain, back, neck, and vision conditions thereby each qualify as a "disability" under Federal law. At all times relevant herein, Plaintiff was able to perform the essential functions of her job and is therefore a "qualified individual with a disability." Defendant was aware at all times herein of Plaintiff's disabilities.

14.  Shortly after Plaintiff's line-of-duty injury, Sergeant Brian Rice (Caucasian), Plaintiff's immediate supervisor at the time, stated to other supervisors about Plaintiff's recovery, "She's causing so much trouble, she'd be better off dead!" Upon information and belief, Sergeant Vaeth (Caucasian male) told officers and sergeants that Plaintiff was faking her physical injuries.

15.  On August 24, 2009, Sergeant Rice submitted a recommendation to his District Commander, Delmar Dickson (Caucasian), that plaintiff be enrolled in the Medical Leave Abuse Control Program (hereinafter referred to as "MLAC Program").

16.   The MLAC Program is designed for officers who abuse non-line-of-duty medical leave. Officers who experience line-of-duty injuries and subsequently take medical leave to cope with said injuries are not typically placed in the MLAC Program.

17.   On August 28, 2009, District Commander Dickson followed Sergeant Rice's recommendation and enrolled Plaintiff in the MLAC Program.

18.   As a condition of enrollment in the MLAC Program, Plaintiff was not allowed to participate in secondary employment or overtime detail, thereby causing her financial harm.

19.   While enrolled in the MLAC Program, Plaintiff was further required to undergo medical treatment on a regular basis from Mercy Hospital and Defendant's Public Service Infirmary ("PSI"), both of which are located in Baltimore City, Maryland. Although Plaintiff lived in Harford County, Maryland, approximately forty-five (45) minutes from Baltimore City, Maryland, she was nonetheless prohibited as a condition of being enrolled in the MLAC Program from going to less-expensive hospitals and clinics near her residence. As such, it was time-consuming and costly to abide by the MLAC Program's requirements.

20.   Additionally, on many occasions, Plaintiff spent an entire day while on full duty at Mercy Hospital due to her line-of-duty injury, yet Defendant never compensated her for said time because Defendant improperly characterized her exercise of medical leave as non-line-of-duty leave.  In fact, her leave was for line of duty injuries.

21.   Plaintiff remained enrolled in the MLAC Program up and through April of 2012, when Plaintiff retired from employment.

22.   Plaintiff is not aware of any other police officers who have been placed in the MLAC Program for a line-of-duty injury.

23.   Plaintiff is further not aware of any other police officers who have taken medical leave because of a line-of-duty injury, but had said leave improperly designated as non-line-of-duty leave and therefore did not receive compensation.

24.   On or about August 6, 2010, Plaintiff complained to Sergeant A. Alvarez (Hispanic male), her squad supervisor at the time, about Ms. Yolanda Brown's, a similarly-situated African-American police officer who worked in Plaintiff's district, harmful behavior and her frequent refusal to act as a back-up unit for Plaintiff.

25.   Immediately thereafter, Sergeant Alvarez spoke with Ms. Brown about Plaintiff's complaints, but Ms. Brown refused to cease her hostile behavior.

26.   In mid or late-August of 2010, Officer-In-Charge ("OIC") Tilson (Caucasian male) acted as Plaintiff's immediate supervisor. He constantly "loaned" Plaintiff out from Northeast District, Sector One (1) to Northeast District, Sector Two (2), and accordingly brought in another officer from Sector Two (2) to cover her Sector One (1) territory. Sectors One (1) and Two (2) are distinct geographical areas within Northeast Baltimore and are patrolled by different police units. Plaintiff complained to OIC Tilson on several occasions about being "loaned" out so often; nonetheless, OIC Tilson continued to "loan" her out to Sector Two (2). OIC Tilson further told Plaintiff that he preferred African-American women, as he was married to one, and could care less about Caucasian women.

27.   Plaintiff is not aware of any other police officers who have been "loaned" out by OIC Tilson to a different police squad.

28.    In addition to never "loaning" Ms. Brown out to a different squad, OIC Tilson treated Ms. Brown more favourably than the Plaintiff by, among other things, giving her days off, letting her leave work early, allowing her to work as a partner unit in the Northeast District One (1) or Two (2) unit instead of at her required unit, and permitting her to frequently ride with another officer rather than utilize her own vehicle.

29.    On October 1, 2010, Sergeant Carolyn White (African-American) became Plaintiff's immediate supervisor. Shortly thereafter, Ms. Brown inaccurately told Sergeant White that Plaintiff was a "trouble maker." Furthermore, Sergeant White also began to "loan" Plaintiff out to a different squad.

30.    On October 8, 2010, both Plaintiff and Ms. Brown participated in a training session, during which Ms. Brown screamed at Plaintiff, "Shut your fucking mouth! You don't ever say 'Brown' out of your fucking mouth," and shouted numerous other profanities at Plaintiff. Sergeant White witnessed this episode of verbal abuse, yet she neither told Ms. Brown to stop yelling at Plaintiff nor took corrective action against her (Ms. Brown). Rather, when Plaintiff was sitting, Sergeant White shook Plaintiff's seat and ordered her to "Shut [her] mouth."

31.    At the conclusion of the aforementioned training session, Sergeant White ordered Plaintiff to walk towards her (Sergeant White) and Ms. Brown. Sergeant White subsequently stated, "We are going to end this now. What's the problem?" Plaintiff politely responded, indicating that she would rather speak to Sergeant White in private because she did not feel comfortable having a discussion in front of Ms. Brown. Sergeant White nevertheless demanded an immediate response.

32.  Plaintiff thereafter explained to Sergeant White that Ms. Brown had repeatedly subjected her (Plaintiff) to a hostile work environment. However, Sergeant White ordered her to "shut up" and lower her voice, to which Plaintiff complied. Sergeant White subsequently asked Ms. Brown to state her version of events. Rather than following Sergeant White's instructions, Ms. Brown immediately put her finger in Plaintiff's face and yelled at her.

33.  At no time did Sergeant White tell Ms. Brown to lower her voice or advise her that her conduct was unbecoming of a police officer. To the contrary, when Plaintiff attempted to ask Ms. Brown to lower her finger, Sergeant White ordered her (Plaintiff) to keep her mouth shut. Sergeant White further prohibited Plaintiff from speaking to a Lieutenant about Ms. Brown's hostile behavior.

34.  On October 12, 2010, Plaintiff met with Deputy Major DeSousa (African-American male) to discuss the hostile work environment she had been subjected to by Sergeant White and Ms. Brown. Plaintiff complained that she was being harassed because of her race, gender, and disabilities.

35.  On October 13, 2010, Sergeants Gadovsky (Caucasian male) and White suspended Plaintiff from duty pending a "Situational Review" contending that she had separated herself from her squad over "the last couple of days." Sergeants Gadovsky and White further informed Plaintiff on October 13, 2010 of their intent to discipline her for allegedly failing to retrieve her departmentally issued equipment from the trunk of her vehicle on October 6, 2010.

36.  The Defendant imposed the sanction of suspension for "separation from one's squad" as a pretext and that the real reason for suspending Plaintiff was because she had

engaged in protected activity when she complained to Deputy Major DeSousa on

October 12, 2010, *supra*, ¶ 34, about discrimination and harassment.

37.   The Defendant further threatened Plaintiff with discipline for having allegedly

engaged in improper conduct on October 6, 2010, *supra*, ¶ 35, as a pretext and that

the real reason for threatening her with disciplinary action was because she had

engaged in protected activity by opposing discriminatory practices in the workplace.

38.   Moreover, the Defendant knew that Plaintiff engaged in said protected activity and

that she was making efforts to end the harassment and discrimination from Sergeant

White and Ms. Brown.

39.   Similarly-situated police officers who were of a different race than Plaintiff, i.e.

female African-American police officers, including but not limited to, Officers

Yolanda Brown, Sheila Sinkler, and Patricia Hobday, were not subjected to the severe

adverse employment action that Plaintiff endured, including, but not limited to: verbal

abuse and suspension by Sergeant White.

40.   Similarly-situated police officers who were of a different race than Plaintiff, i.e.

female African-American police officers, including, but not limited to, Officers

Sheila Sinkler and Patricia Hobday, were further not subjected to the severe adverse

employment action that Plaintiff endured from Ms. Brown, including, but not limited

to, Ms. Brown's hostile behavior, verbal abuse, and deliberate refusal to provide

back-up patrol.

41.   As a result of her suspension from full duty status and being threatened with

additional disciplinary action, Plaintiff was unable to work overtime and suffered

from extreme emotional distress such that in late 2010, she began to see a psychologist.

42. On October 22, 2010, Plaintiff filed two (2) internal EEO complaints with the Baltimore City Police Department which opposed, among other things, racial discrimination in the workplace, hostile work environment, and retaliation for engaging in protected activity.

43. On November 15, 2010, due to pressure from the Defendant, Plaintiff was transferred from the Northeast District to the Southeast District. As a result of this transfer, Sergeant Stuart (Caucasian male) became her immediate supervisor.  Sergeant Stuart often yelled at Plaintiff and would make derogatory comments about her to other police officers. Additionally, while Plaintiff worked in the Southeast District, Lieutenant Earl Jenkins (Caucasian male) also acted in a hostile and threatening manner towards Plaintiff.

44. On December 15, 2010, Plaintiff was written up for allegedly committing insubordination on October 21, 2010.

45. On January 9, 2011, Plaintiff's police powers were suspended for allegedly making a false claim that she had approved leave for January 2, 2011. Furthermore, Sergeant Stuart thereafter forced Plaintiff to strip in front of male officers and turn over her vest and gun belt, exposing her bra and linens.

46. Plaintiff is not aware of any other female police officers who have been forced to strip in front of male officers.

47. On February 2, 2011, Plaintiff was written up for allegedly failing to properly secure her departmentally issued equipment, *supra*, ¶ 35.

48.  On February 11, 2011, Plaintiff was written up for allegedly forging the signature of Sergeant White to obtain leave on January 2, 2011, as well as allegedly making a false statement to Sergeant Stuart regarding said exercise of leave.

49.  Sometime in between February 14 and 16, 2011, Plaintiff had suffered from back complications as a result of her line-of-duty injury. Consequently, on February 17, 2011, Plaintiff went to Defendant's Public Service Infirmary ("PSI") to seek medical treatment, but Lieutenant Morse (Africa-American male) refused to let her see a physician.

50.  On March 19, 2011, due to pain originating from her line-of-duty injury, Plaintiff was driven to Mercy Hospital for medical treatment. Her treating physician at Mercy Hospital, as well as Defendant's PSI Technician whom she saw immediately thereafter, told her to remain off duty up and through March 21, 2011. Nevertheless, on March 19, 2011, Lieutenant Earl Jenkins ignored said medical order, yelled profanities at Plaintiff, placed Plaintiff on full-duty status, and forced her to work without being compensated.

51.  Similarly-situated police officers outside the protected class, i.e. male police officers, including, but not limited to, Officers Eric Frate, Jason Williams, Rafael McCloud, [first name unknown] Bennett, and [first name unknown] Dolcine, were not subjected to the severe adverse employment action that Plaintiff endured, including, but not limited to: verbal abuse, multiple suspensions and write-ups, denial of medical care, and forced to work despite being informed by a physician to remain off duty for medical reasons.

52.  On March 27, 2011, Lieutenant Sonya Ford (African-American) slammed documents on Plaintiff's desk, verbally abused her, and thereafter physically assaulted her. Although Plaintiff sought medical treatment and filed an incident report on June 28, 2011, Lieutenant Ford was never reprimanded.

53.  From May 5, 2011 through July 12, 2011, Plaintiff was improperly placed off duty without pay.

54.  On August 25, 2011, Plaintiff filed a Charge of Discrimination with the Baltimore Community Relations Commission, contending that she was discriminated against based on her race, sex, and disability, and retaliated against for engaging in protected activities.

55.  On August 30, 2011, Plaintiff had been charged for allegedly reflecting discredit upon herself and the Baltimore City Police Department on April 13, 2011.

56.  On September 6, 2011, Plaintiff had a suspension hearing with regard to allegedly having failed to retrieve her departmentally issued equipment from the trunk of her vehicle on October 6, 2010, *supra*, ¶ 35. Plaintiff's police powers thereafter remained suspended and she was only allowed to perform administrative duties.

57.  In April of 2012, Plaintiff retired from employment.

58.  Since her retirement from employment, Plaintiff regularly sees a neuropsychologist to cope with her emotional distress resulting from Defendant's discriminatory, harassing, and retaliatory conduct.

59.  At all times mentioned herein, Plaintiff was meeting her employer's legitimate job expectations.

## COUNT I
## GENDER DISCRIMINATION
### (Disparate Treatment)
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. §§ 2000e et seq.

60.     Plaintiff hereby restates and incorporates paragraphs 1 through 59 of this Complaint

        as though fully set forth herein.

61.     That Defendant carried out the aforementioned acts of discrimination against Plaintiff

        on the basis of her gender (female) – a protected class under Title VII.

62.     Plaintiff was qualified for the position she formerly held and was performing her job

        duties at a level that met or exceeded Defendant's legitimate expectations.

63.     That the aforementioned acts constitute unlawful practices pursuant to Title VII of the

        Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.

64.     That the effect of the practices complained of above was to deprive Plaintiff of equal

        employment opportunities and otherwise adversely affect her status as an employee

        because of her gender (female).

65.     That the unlawful employment practices complained of above were intentional.

66.     That similarly-situated employees outside the protected class, including but not

        limited to, Eric Frate, Jason Williams, Rafael McCloud, [first name unknown]

        Bennett, [first name unknown] Dolcine, and Annibal Fernandez (Hispanic male),

        male police officers employed by the Defendant, were not subjected to the severe

        adverse employment action that Plaintiff endured, including, but not limited to:

        improper enrollment in the MLAC program for a line-of-duty injury, denial of

        compensation for proper exercise of medical leave, reduced disability benefits,

        "loaned out" by Officer-in-Charge Tilson, verbal abuse, multiple suspensions and

write-ups, denial of medical care, forced to work despite being informed by a physician to remain off duty for medical reasons, and improperly designated as "unfit for duty without pay."

67.   That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation and mental anguish.

68.   That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT II
### DISCRIMINATION ON THE BASIS OF RACE
### (Disparate Treatment)
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. §§ 2000e et seq.

69.   Plaintiff hereby restates and incorporates paragraphs 1 through 59 of this Complaint as though fully set forth herein.

70.   That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of her race (Caucasian) – a protected class under Title VII.

71.   Plaintiff was qualified for the position she formerly held and was performing her job duties at a level that met or exceeded Defendant's legitimate expectations.

72.   That the aforementioned acts constitute unlawful practices pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.

73.   That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her race (Caucasian).

74.   That similarly-situated employees outside the protected class, including but not limited to, Yolanda Brown, Sheila Sinkler, and Patricia Hobday, African-American police officers employed by the Defendant, were not subjected to the severe adverse employment action that Plaintiff endured, including, but not limited to: denial of compensation for proper exercise of medical leave, "loaned out" by Officer-in-Charge Tilson, unable to take days off from work and/or leave early from work, unable to deviate from an assigned unit, verbal abuse, physical assault, multiple suspensions and write-ups, denial of medical care, forced to work despite being informed by a physician to remain off duty for medical reasons, refused back-up, and improperly designated as "unfit for duty without pay."

75.   That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation, and mental anguish.

76.   That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

### COUNT III
### DISCRIMINATION ON THE BASIS OF COLOUR
#### (Disparate Treatment)
#### Title VII of the Civil Rights Act of 1964
#### 42 U.S.C. §§ 2000e et seq.

77.   Plaintiff hereby restates and incorporates paragraphs 1 through 59 of this Complaint as though fully set forth herein.

78.   That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of her colour (light skinned) – a protected class under Title VII.

79.   Plaintiff was qualified for the position she formerly held and was performing her job

duties at a level that met or exceeded Defendant's legitimate expectations.

80.   That the aforementioned acts constitute unlawful practices pursuant to Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.

81.   That the effect of the practices complained of above was to deprive Plaintiff of equal

employment opportunities and otherwise adversely affect her status as an employee

because of her colour (light skinned).

82.   That the unlawful employment practices complained of above were intentional.

83.   That similarly-situated employees outside the protected class, including but not

limited to, Yolanda Brown, Sheila Sinkler, and Patricia Hobday, dark-skinned police

officers employed by the Defendant, were not subjected to the severe adverse

employment action that Plaintiff endured, including, but not limited to: denial of

compensation for proper exercise of medical leave, "loaned out" by Officer-in-

Charge Tilson, unable to take days off from work and/or leave early from work,

unable to deviate from an assigned unit, verbal abuse, physical assault, multiple

suspensions and write-ups, denial of medical care, forced to work despite being

informed by a physician to remain off duty for medical reasons, refused back-up, and

improperly designated as "unfit for duty without pay."

84.   That the discriminatory actions, as set forth above, have caused and will continue to

cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress,

humiliation, and mental anguish.

85.   That the intentional discriminatory actions of Defendant, as alleged above, were done

with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT IV
### RETALIATION
### (Adverse Actions and Protected Activity Deterrents)
### Title VII of the Civil Rights Act of 1964 (Title VII)
### 42 U.S.C. §§ 2000e et seq.

86.  Plaintiff hereby restates and incorporates paragraphs 1 through 59 of this Complaint as though fully set forth herein.

87.  On or about August 6, 2010, Plaintiff complained to Sergeant A. Alvarez (Hispanic male), her squad supervisor at the time, about Ms. Brown's hostile behavior and frequent refusal to act as a back-up unit for Plaintiff.

88.  On or around October 8, 2010, Plaintiff explained to Sergeant White that Ms. Brown had repeatedly subjected her (Plaintiff) to a hostile work environment. However, Sergeant White immediately ordered her to "shut up" and lower her voice, to which Plaintiff complied. Sergeant White subsequently asked Ms. Brown to state her version of events. Rather than following Sergeant White's instructions, Ms. Brown immediately put her finger in Plaintiff's face and yelled at her.

89.  On October 12, 2010, Plaintiff met with Deputy Major DeSousa (African-American male) to discuss the hostile work environment she had been subjected to by Sergeant White and Ms. Brown. Plaintiff complained that she was being harassed because of her race, gender, and disabilities.

90.  On October 22, 2010, Plaintiff filed two (2) internal eeo complaints with the Baltimore City Police Department which opposed, among other things, racial discrimination in the workplace, hostile work environment, and retaliation for engaging in protected activity.

91.  On August 25, 2011, Plaintiff filed a Charge of Discrimination with the Baltimore

Community Relations Commission, contending that she was discriminated against

based on her race, sex, and disability, and retaliated against for engaging in protected

activities.

92.  The aforementioned complaints constitute "legally protected activities" under Title

VII and were known by management to have occurred. Her protected activities were

communicated to various upper management officials and Defendant's eeo office.

93.  The subsequent adverse employment actions as set forth in the above-referenced facts

common to all counts amounted to illegal retaliation.

94.  That the aforementioned acts of retaliation for complaining of hostile work

environment and discrimination constitute unlawful employment practices pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

95.  That the effect of the practices complained of above was to deprive Plaintiff of equal

employment opportunities and otherwise adversely affect her status as an employee

based upon her protected EEO activities.

96.  That the retaliatory employment practices: a) "loaned out" by Officer-in-Charge

Tilson; b) unable to take days off from work and/or leave early from work; c) unable

to deviate from an assigned unit; d) verbal abuse; e) physical assault; f) multiple

suspensions and write-ups; g) forced to strip in front of male officers; h) denial of

medical care; i) denial of compensation for proper exercise of medical leave; j) forced

to work despite being informed by a physician to remain off duty for medical reasons;

k) refused back up; and l) improperly designated as "unfit for duty without pay," as

set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation, and mental anguish.

97.    That the intentional retaliatory actions complained of above were done with malice and/or with reckless indifference to Plaintiff's rights.

98.    As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost wages and benefits, emotional distress, attorney's fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

### COUNT V
### DISABILITY DISCRIMINATION
#### (Disparate Treatment)
**Americans with Disabilities Act of 1990**
**42  U.S.C. §§ 12101 et seq.**

99.    Plaintiff hereby restates and incorporates paragraphs 1 through 59 of this Complaint as though fully set forth herein.

100.   Title I of the ADA, 42 U.S.C. §§ 12111-12117, prohibits discrimination against disabled individuals in the terms, conditions, and privileges of employment.

101.   Defendant BPD is a "covered entity" and "employer" under Title I of the ADA, 42 U.S.C. § 12111(2) and (5) respectively.

102.   At all relevant times herein, Plaintiff has suffered, and continues to suffer, from physical pain and cognitive debilitation as a direct result of her line-of-duty injury, *supra*, ¶ 12.

103.   That similarly-situated employees outside the protected class, including but not limited to, Eric Frate, Jason Williams, Rafael McCloud, [first name unknown] Bennett, [first name unknown] Dolcine, Annibal Fernandez, Yolanda Brown, Sheila

Sinkler, and Patricia Hobday, police officers without disabilities and employed by the Defendant, were not subjected to the severe adverse employment actions that Plaintiff endured, including, but not limited to: improper enrollment in the MLAC program for a line-of-duty injury, denial of compensation for proper exercise of medical leave, "loaned out" by Officer-in-Charge Tilson, unable to take days off from work and/or leave early from work, unable to deviate from an assigned unit, verbal abuse, physical assault, multiple suspensions and write-ups, denial of medical care, forced to work despite being informed by a physician to remain off duty for medical reasons, refused back up, and improperly designated as "unfit for duty without pay."

104.   As a direct and proximate result of the Defendant's discriminatory actions, Plaintiff has suffered lost wages and benefits, emotional distress, attorney's fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## PRAYER FOR DAMAGES

WHEREFORE, for the foregoing reasons, Kimberly R. Boyles, Plaintiff, demands judgment against Defendant, Baltimore City Police Department, as follows:

   a.   Compensatory damages in excess of $75,000.00;

   b.   Punitive damages in excess of $75,000.00;

   c.   Prejudgment and post judgment interest;

   d.   Award attorneys' fees and costs, as allowed by law;

   e.   And for such other and further relief as this Honorable Court deems just and equitable.

Respectfully Submitted,

Paul V. Bennett, Esq.
Law Office of Paul V. Bennett, P.A.
133 Defense Hwy., Suite 209
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: pbennett@paulvbennett.com

*Attorney for Plaintiff*

Kimberly R. Boyles          *          IN THE
8435 Glen Lake Drive
Cummings, GA 30028          *          CIRCUIT COURT

Plaintiff,                  *          FOR

v.                          *          BALTIMORE CITY

Baltimore City Police Department   *
242 West 29th Street
Baltimore, MD 21211          *

Serve on Resident Agent:     *
                                        Civil Action No._____
    Anthony W. Batts          *
    Police Commissioner
    242 West 29th Street      *
    Baltimore, MD 21211
                             *

    Defendant.               *

                             *

*    *    *    *    *    *    *    *    *    *    *    *    *

## DEMAND FOR JURY TRIAL

Plaintiff, Kimberly R. Boyles, by and through her attorneys, Paul V. Bennett, Esq.,

Jeffrey J. Sadri, Esq., and the Law Office of Paul V. Bennett, P.A., hereby demands that this

above captioned matter be tried before a jury on all issues so triable.

Respectfully Submitted,

Paul V. Bennett, Esq.
Law Office of Paul V. Bennett, P.A.
133 Defense Hwy., Suite 209
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: pbennett@paulvbennett.com

*Attorney for Plaintiff*